# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **COLLEEN KUCHAR** <br> c/o her attorneys Tittle & Perlmuter <br> 4106 Bridge Avenue <br> Cleveland, OH  44113 <br><br> On behalf of herself and all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> **SABER HEALTHCARE HOLDINGS, LLC** <br> c/o its Statutory Agent <br> Gregory Nicoluzakis <br> 26691 Richmond Road <br> Bedford Heights, Ohio 44146 <br><br> -and- <br><br> **SABER HEALTHCARE GROUP, LLC,** <br> c/o its Statutory Agent <br> Gregory Nicoluzakis <br> 26691 Richmond Road <br> Bedford Heights, Ohio 44146 <br><br> -and- <br><br> **MULTI-CARE MANAGEMENT, INC.** <br> c/o Statutory Agent <br> 350 Corporate Circle, Inc. <br> 30100 Chagrin Boulevard, Ste. 350 <br> Cleveland, OH 44124 <br><br> -and- <br><br> **AURORA MANOR LP** <br> c/o its Statutory Agent <br> Portage County Alzheimer Etc <br> 3659 Green Road <br> Suite 320 <br> Beachwood, Ohio 4122 | CASE NO. <br><br> JUDGE <br><br> Magistrate Judge <br><br> **PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARD ACT AND STATE LAW WITH JURY DEMAND** |

|  |  |  |
|---|---|---|
|  |  | ) |
| Defendants. |  | ) |
|  |  | ) |

Plaintiff Colleen Kuchar, through counsel, for her Class and Collective Action Complaint against Defendants Saber Healthcare Holdings, LLC, Saber Healthcare Group, LLC, Multi-Care Management, Inc., and Aurora Manor LP (together "Defendants"), states and alleges as follows:

## INTRODUCTION

1. This case challenges Defendants' practice by which they willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15, and Ohio Const. art. II, § 34a.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to § 216(b) (the "Potential Opt-Ins").

3. Plaintiff also brings this case as a class action pursuant to FED. R. CIV. P. 23 on behalf of herself and other members of two classes of persons, defined herein (the "Ohio Classes"), who assert factually-related claims under Ohio's overtime compensation statute and Prompt Pay Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because all Defendants are headquartered and therefore reside in this district and division, and all Defendants have each conducted continuous business at skilled nursing facilities within the territorial jurisdiction of this Court. Moreover, as described below, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and division.

## PARTIES

7. Plaintiff Colleen Kuchar is a citizen of the United States and an Ohio resident and, at all times relevant as described below, was an employee of all Defendants, working at Defendants' skilled nursing, long-term care, and rehabilitation facility known as Aurora Manor Special Care Centre.

8. Defendant Saber Healthcare Holdings, LLC is a domestic limited liability company that is headquartered in Cuyahoga County, Ohio that conducts business through its direct and indirect ownership of skilled nursing, long-term care, and rehabilitation facilities throughout Ohio, including facilities in this district and division, as well as in other locations in Delaware, Florida, Indiana, North Carolina, Pennsylvania, and Virginia. According to records maintained by the Ohio Secretary of State, Saber Healthcare Group, LLC's statutory agent for service of process is Gregory Nicoluzakis, 26691 Richmond Road, Bedford Heights, Ohio 44146.

9. Defendant Saber Healthcare Group, LLC is a domestic limited liability company that is headquartered in Cuyahoga County, Ohio, is an affiliate or subsidiary of Saber Healthcare Holdings, and, at all times relevant, provided consulting services, including legal compliance services, to the various facilities owned by Saber Healthcare Holdings, including facilities in this

3

district and division. According to records maintained by the Ohio Secretary of State, Saber Healthcare Group, LLC's statutory agent for service of process is Gregory Nicoluzakis, 26691 Richmond Road, Bedford Heights, Ohio 44146.

10. Defendant Multi-Care Management, Inc. is a domestic limited liability company that is headquartered in Cuyahoga County, Ohio, is also an affiliate or subsidiary of Saber Healthcare Holdings, LLC and Saber Healthcare Group, LLC and, at all times relevant, provided operational and management services at several Saber Healthcare Holdings, LLC facilities, including Aurora Manor Special Care Centre. According to records maintained by the Ohio Secretary of State, Multi-Care Management, Inc.'s statutory agent for service of process is 350 Corporate Circle, Inc., 30100 Chagrin Boulevard, Beachwood, Ohio 44124.

11. Defendant Aurora Manor LP is a domestic limited partnership that conducts business in this district and division, is an affiliate or subsidiary of Saber Healthcare Holdings, LLC, and at all times relevant, provided operational and management services at Aurora Manor Special Care Centre. According to records maintained by the Ohio Secretary of State, Aurora Manor LP's statutory agent for service of process is Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

## FACTUAL ALLEGATIONS

### Defendants' Business

12. Saber Healthcare Holdings LLC, directly and indirectly owns more than 100 skilled nursing and rehabilitation facilities in Ohio, Pennsylvania, Virginia, Indiana, Delaware, North Carolina, and Florida, including Aurora Manor Special Care Centre. Those facilities, when referenced hereinafter collectively, are so referred to as "Saber Facilities."

13. Saber Healthcare Holdings LLC operates and manages the Saber Facilities through its affiliates and subsidiaries like the co-Defendants herein, as well as dozens of other similar affiliate and subsidiary entities across the country.

**Defendants' Employment of Plaintiff, the Opt-Ins, and Class Members**

14. Plaintiff, the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b), and all members of the Ohio Classes worked for Defendants as Minimum Data Set ("MDS") nurses.

15. According to job postings on ZipRecruiter.com, an MDS nurse's job duties consist of "collect[ing] information and data and us[ing] it to create reports on patient health care at the facility" required by State and federal governments.

16. MDS nurses perform those assessments through the completion of a Resident Assessment Instrument ("RAI") form for each patient, done at admission, quarterly, and with changes in patients' condition.

17. Literature published by the Centers for Medicare & Medicaid Services ("CMS") states that the RAI "provides a structured, standardized approach for applying a problem identification process in long-term care facilities."

18. An RAI is completed utilizing the well-established techniques and guidelines set forth in CMS' RAI Manual, the current version of which can be found at https://downloads.cms.gov/files/mds-3.0-rai-manual-v1.17.1_october_2019.pdf.

19. Defendants hire both registered nurses ("RNs") and licensed practical nurses ("LPNs") as MDS nurses. Their job posts state that applicants to the position "[p]referably [have] 1-year experience in working with the [Resident Assessment Instrument] process" and/or "[p]referably [have] 1-year experience in MDS Coordinator."

20. Plaintiff is an LPN and was employed by Defendants at Aurora Manor Special Care Center from 2012 until April 29, 2020. She was initially hired as a floor nurse in 2012 and accepted a new position as MDS nurse in 2014, without any prior experience in MDS nursing. Plaintiff worked as an MDS nurse for Defendants from 2014 until the end of her tenure.

21. According to its listing on Saber Healthcare Group's website, Aurora Manor Special Care Center is a 24-hour skilled nursing care center that provides its patients and residents physical therapy, occupational therapy, speech therapy, short-term and long-term care, hospice care, respite care, and 24-hour skilled nursing care.

22. Defendants regularly scheduled MDS nurses, including Plaintiff Colleen Kuchar, to work 40 hours per workweek.

23. Despite being scheduled for 40 hours per workweek, the demands of the job required Plaintiff, the Potential Opt-Ins, and the Ohio Class Members to work before and after their scheduled shifts.

24. Thus, Defendants' MDS nurses, including Plaintiff Colleen Kuchar, were regularly required to work more than 40 hours per week.

25. Some of Defendants' MDS nurses were compensated on a salary basis, others on an hourly basis.

26. Colleen Kuchar fell into each of those categories at different times during her tenure with Defendnts. She was paid on a salary basis from the time that she accepted the MDS nurse position in 2014 through roughly March 24, 2019. She was then switched by Defendants to an hourly pay basis, and was paid that way from roughly March 24, 2019 through the end of her tenure with Defendants.

**Defendants' Status as "Employers"**

27. Defendant Aurora Manor LP was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d) and Ohio Rev. Code Ann. § 4111.03(D)(2), as it was listed as Colleen Kuchar's employer on her W-2.

28. Defendant Multi-Care Management, Inc. was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d) and Ohio Rev. Code Ann. § 4111.03(D)(2), in that it had authority to promulgate work rules and assignments and to set the employees' working conditions. By way of example, Multi-Care Management, Inc. promulgated and published the employee handbook governing the work of Plaintiff and her co-workers at Aurora Manor Special Care Center.

29. Defendants Saber Healthcare Holdings LLC and Saber Healthcare Group LLC were also "employers" of Plaintiff, the Potential Opt-Ins, and the Ohio Class Members pursuant to 29 U.S.C. § 203(d) and Ohio Rev. Code Ann. § 4111.03(D)(2) in that they "act[ed] directly or indirectly in the interest of an employer," Defendant Aurora Manor LP, "in relation to employees," including Plaintiff, the Potential Opt-Ins, and the Ohio Class Members.

30. Defendant Saber Healthcare Holdings LLC has operational control over significant aspects of Aurora Manor LP's operations and day-to-day functions, including the hiring and firing, and daily supervision, of Aurora Manor LP's employees. For instance, Colleen Kuchar's direct supervisor was an employee of Saber Healthcare Holdings LLC.

31. Defendant Saber Healthcare Group LLC has operational control over significant aspects of Aurora Manor LP's operations and day-to-day functions, including by setting the timekeeping practices and compensation of Aurora Manor LP's employees.

32. At all times relevant, all Defendants were, individually and jointly, an enterprise within the meaning of 29 U.S.C. § 203(r), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

33. All of the Defendants share common and/or overlapping ownership and management.

**Defendants' Status as Joint Employers and as an Integrated Enterprise**

34. Department of Labor regulations provide that employees may work simultaneously for two or more "joint employers." 29 C.F.R. § 791.2(a). Joint employment occurs when the two employers are "not completely disassociated" from one another. *Id*. Joint employers "are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions." *Id*.

35. Defendants were joint employers of Plaintiff, the Potential Opt-Ins, and the Ohio Class Members, as more fully alleged in Paragraphs 27 through 33.

36. At all times relevant, Defendants were an "integrated enterprise" because they are so interrelated such that they can be considered a single enterprise. They share overlapping ownership, management, and control by and through the individual Defendants, as more fully in Paragraphs 27 through 33.

**Defendants' Failure to Pay Salaried MDS Nurses an Overtime Premium**

37. During the period that she was salaried, like all salaried MDS nurses at Saber Facilities, Ms. Kuchar was paid the same amount every pay period. In other words, Defendants do not pay an overtime premium to MDS nurses of one-and-one-half their regular rate of pay for hours worked over forty in a workweek.

8

38. Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were non-exempt from overtime pay in that the FLSA and Ohio law required Defendants to pay Plaintiff, the Potential Opt-Ins, and the Ohio Class Members overtime compensation of at least one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. § 778.117. The calculation of the "regular rate" must include "all remunerations for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e)(3); 29 C.F.R. § 778.117.

**Defendants' Failure to Pay Hourly MDS Nurses for All Hours Worked**

39. During the period that she was hourly, like all hourly nurses at Saber Facilities, Defendants did not pay Ms. Kuchar for all of the hours that Defendants suffered or permitted her to work.

40. Rather, Defendants expected and required Ms. Kuchar and all hourly MDS nurses to perform unpaid work off-the-clock before and after their scheduled shifts, and during break periods.

41. For instance, Defendants automatically deducted an unpaid, thirty-minute meal break from its hourly MDS nurses every shift.

42. However, Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were rarely able to stop working during their meal breaks.

43. Defendants knew that this work was being performed by Plaintiff, the Potential Opt-Ins, and the Ohio Class Members off-the-clock.

44. For example, Plaintiff, the Potential Opt-Ins, and the Ohio Class Members' work was largely performed in PointClickCare, Defendants' electronic medical record system.

45. Upon information and belief, PointClickCare logs, by date and time, the work performed by Defendants' MDS nurses.

46. PointClickCare logs put Defendants on notice that its MDS nurses were working more than the 40 hours per workweek that they were paid.

47. Further, on several occasions, Plaintiff attempted to turn in timesheets that accurately reflected the number of hours she worked that workweek.

48. In response, Defendants' administrator told her that she was not permitted to put more than 40 hours on any timesheet.

49. As a result of practices such as those described in Paragraphs 39 through 48, Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were deprived of regular and overtime pay.

50. Plaintiff, the Potential Opt-Ins, and the Ohio Class Members frequently worked forty or more hours per workweek, and thus, absent Defendants' failure to pay for all hours worked including by the practices described in Paragraphs 39 through 48, would have received overtime compensation, or additional overtime compensation.

### The Willfulness of Defendants' Violations

51. Defendants knew that Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law, or otherwise acted in reckless disregard for whether they were so entitled.

52. Defendants intentionally and willfully circumvented the requirements of the FLSA and state law. Defendants designed their MDS nurse classification, scheduling, timekeeping, and

payroll policies and practices in an attempt to reduce employees' paid hours and circumvent federal and state wage-and-hour laws.

## COLLECTIVE ACTION ALLEGATIONS

53. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

54. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability "prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of themselves and other employees similarly situated."

55. Plaintiff bring this case on behalf of two collective groups of MDS nurses employed by Defendants: (1) a Salaried MDS Nurse Collective, and (2) an Hourly MDS Nurse Collective.

56. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Defendants' FLSA violations as to the Salaried MDS Nurse Collective consist of:

> All full-time, salaried MDS nurses who were employed by one or more of the Defendants during the period three years preceding the commencement of this action to the present.

57. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were subject to and injured by Defendants' unlawful timekeeping and payroll practices, and all have the same claims against Defendants for unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

58. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Defendants' FLSA violations as to the Hourly MDS Nurse Collective consist of:

11

> All full-time, hourly MDS nurses who were employed by one or more of the Defendants during the period three years preceding the commencement of this action to the present.

59. Such persons are also "similarly situated" with respect to Defendants' FLSA violations in that all were subject to and injured by Defendants' unlawful timekeeping and payroll practices, and all have the same claims against Defendants for unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

60. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary such that all such persons should receive a Court-authorized notice informing them of the pendency of the action and giving them the opportunity to "opt in."

61. Upon information and belief, the number of similarly-situated persons as to each collective group exceeds 200. Such persons are readily identifiable through the records Defendants have maintained, and were required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

## CLASS ACTION ALLEGATIONS

62. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

63. Plaintiff brings this case on behalf of herself and other members of two proposed classes: (1) a Salaried MDS Nurse Class, and (2) an Hourly MDS Nurse Class.

64. The Salaried MDS Nurse Class is defined as:

> All full-time, salaried MDS nurses who were employed in Ohio by one or more of the Defendants during the period three years preceding the commencement of this action to the present.

65. The Hourly MDS Nurse Class is defined as:

> All full-time, hourly MDS nurses who were employed in Ohio by one or more of the Defendants during the period three years preceding the commencement of this action to the present.

66. Both Ohio Classes are so numerous that joinder of all Class Members is impracticable. Plaintiff avers, upon information and belief, that each of the Ohio Classes totals more than 100 employees of Defendants. The number of Class Members as well as their identities are ascertainable from records Defendants have maintained, and was required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

67. Questions of law or fact common to both Ohio Classes predominate.

68. With respect to the Salaried MDS Nurse Class, those questions include, but are not limited to:

   a) Whether Defendants were required to pay Plaintiff and the Salaried MDS Nurse Class Members one and one-half times their "regular rate" for hours worked in excess of forty hours in a workweek;

   b) Whether Defendants violated Ohio law by failing timely to pay Plaintiff and the Salaried MDS Nurse Class Members for all hours worked on a semi-monthly basis, and never rectified that failure to pay in a timely manner; and

   c) Whether Defendants deprived Plaintiff and other the Salaried MDS Nurse Class Members of overtime compensation at one and one-half times their "regular rate" for hours worked in excess of forty hours in a workweek.

69. With respect to the Hourly MDS Nurse Class, those questions include, but are not limited to:

   a) Whether Defendants required Plaintiff and other Hourly MDS Nurse Class Members to perform unpaid work during their unpaid lunch breaks;

   b) Whether Defendants knew or should have known that Plaintiff and other Hourly MDS Nurse Class Members were working off-the-clock, but still failed to pay them;

      c) Whether Defendants violated Ohio law by failing timely to pay Plaintiff and other Hourly MDS Nurse Class Members for all hours worked on a semi-monthly basis, and never rectifying that failure to pay in a timely manner; and

      d) Whether Defendants deprived Plaintiff and other Class Members of overtime compensation at one and one-half times their "regular rate" for hours worked in excess of forty hours in a workweek.

    70.    Plaintiff is a member of both Classes, and her claims as to both are typical of the claims of other members of the Ohio Classes. As to both Classes, Plaintiff's claims arise out of the same uniform courses of conduct by Defendants, and are based on the same legal theories, as the claims of other Class Members.

    71.    Plaintiff will fairly and adequately protect the interests of the Ohio Classes. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other Class Members in both Classes. Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Classes in this case.

    72.    The questions of law or fact that are common to the Ohio Classes predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

    73.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.

Certification of this case as a class action pursuant to FED. R. CIV. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

74. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

75. Plaintiff bring this claim for violation of the FLSA's overtime provisions on behalf of herself and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to be a party to this action pursuant to § 216(b) is filed herewith.

76. The FLSA required Defendants to pay their non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. § 778.117.

77. Defendants failed to pay requisite overtime compensation to Plaintiff and the Potential Opt-Ins for all hours worked in excess of forty hours in a workweek. As more fully described above, Defendants, in violation of law, failed to pay salaried MDS nurses any overtime premium pay, and failed to pay hourly MDS nurses for all hours suffered or permitted to work.

78. By engaging in these practices, Defendants willfully violated the FLSA and regulations thereunder that have the force and effect of law.

79. As a result of Defendants' violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive minimum wages and overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Overtime Violations)

80. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

81. Plaintiff brings this claim for violation of the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, on behalf of herself, the Potential Opt-Ins, and the members of both Ohio Classes.

82. At all times relevant, Defendants were employers covered by the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03.

83. Defendants violated the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, by failing to pay all overtime compensation to its MDS nurses when due.

84. Defendants' violations of Ohio Rev. Code Ann. § 4111.03 injured Plaintiff, the Potential Opt-Ins, and the members of both Ohio Classes in that they did not receive overtime compensation due to them pursuant to that statute.

85. Ohio Rev. Code Ann. § 4111.10(A) provides that Defendants, having violated Ohio Rev. Code Ann. § 4111.03, are "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] by the employer, and for costs and reasonable attorney's fees as may be allowed by the court."

## COUNT THREE
### (Ohio Prompt Pay Act Violations)

86. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

87. Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15(A), provides that "[e]very employer doing business in this state shall, on or before the first day of each month, pay all its

employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

88. Defendants failed to pay all wages due under Ohio's Prompt Pay Act to Plaintiff and the members of both Ohio Classes, which entitles them to the unpaid wages, plus "an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater."

## COUNT FOUR
### (Ohio Record-Keeping Violations)

89. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

90. The OFMWA required Defendants to maintain accurate and complete records of employees' time. Ohio Const. art. II, § 34a.

91. Defendants violated the OFMWA record-keeping requirement by failing to maintain accurate and complete records of its MDS nusres' working time.

92. As a result of Defendants' record-keeping violations, Plaintiff and the members of both Ohio Classes were injured in that Defendants do not have accurate and complete records of their working hours.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) on behalf of the Salaried MDS Nurse Collective and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) on behalf of the Hourly MDS Nurse Collective and

   direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

C. Certify this case as a class action pursuant to FED. R. CIV. P. 23 on behalf of Plaintiff and other members of the Hourly MDS Nurse Class;

D. Certify this case as a class action pursuant to FED. R. CIV. P. 23 on behalf of Plaintiff and other members of the Salaried MDS Nurse Class;

E. Enter judgment against Defendants and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and both Ohio Classes;

F. Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Classes in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

G. Award Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

         Respectfully submitted,

         s/ Scott D. Perlmuter
         Scott D. Perlmuter (0082856)
         4106 Brdige Avenue
         Cleveland, OH 44113
         216-308-1522
         Fax: 888-604-9299
         scott@tittlelawfirm.com

         /s/ Joshua B. Fuchs
         Joshua B. Fuchs (0087066)
         **THE FUCHS FIRM LLC**
         14717 South Woodland Road
         Shaker Heights, Ohio 44120
         216-505-7500 [phone and fax]
         josh@fuchsfirm.com

         Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)