UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------------

COLLEEN KUCHAR,

   Plaintiff,

vs.

SABER HEALTHCARE HOLDINGS, LLC, et al.

   Defendants.

-------------------------------------------------------------

CASE NO. 1:20-cv-02542

OPINION & ORDER
[Resolving Doc. 34]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Colleen Kuchar sues her former employer and related entities for federal and state overtime and wage violations.[1] Now, Kuchar asks the Court to conditionally certify a 29 U.S.C. § 216(b) Fair Labor Standards Act ("FLSA") collective of similarly situated employees.[2] Defendants oppose.[3]

For the following reasons, the Court **CONDITIONALLY CERTIFIES** Plaintiff's FLSA collective, but slightly amends Plaintiff's proposed collective definitions.

I.  **Background**

From 2012 to 2020, Plaintiff worked mostly as a minimum data set ("MDS") nurse at Aurora Manor Special Care Centre, an Aurora, Ohio nursing and care facility.[4] At Aurora Manor—and at Defendants' other facilities, according to Plaintiff—an MDS nurse is a

---

[1] Doc. 1; Doc. 11.
[2] Doc. 34; Doc. 34-1.
[3] Doc. 37.
[4] Doc. 11 at 4, 11.

licensed nurse who collects information and creates patient care reports to meet state and federal reporting requirements.[5]

Plaintiff's FLSA claims allege that Defendant employers failed to pay her and similarly situated nurses overtime.[6] Plaintiff says Defendants misclassified MDS nurses as FLSA-exempt, required employees to underreport their hours, and automatically deducted lunch breaks from employees' hours, even when the employees did not take a full lunch break.[7]

Plaintiff seeks to certify two FLSA collectives of:

> [1] Salaried MDS nurses and coordinators who worked more than 40 hours in one or more work weeks at any time in the three years preceding the date of the grant of conditional certification at any of the 122 facilities listed on Saber Healthcare Group, LLC's website and who have not executed arbitration agreements with Defendants; and . . .
>
> [2] Hourly nurses at Aurora Manor who worked more than 40 hours in one or more work weeks at any time in the three years preceding the date of the grant of conditional certification and who have not executed arbitration agreements with Defendants.[8]

Plaintiff contends that all Defendants make up an "integrated enterprise" and that each Defendant can be considered a joint employer.[9] As such, Plaintiff seeks to conditionally certify a collective that covers all Defendant-affiliated facilities throughout

---

[5] *Id.* at 11, 13.
[6] *Id.* at 19–20.
[7] *Id.* at 13–14, 19; Doc. 37 at 8.
[8] Doc. 34 at 1; Doc. 39 at 18.
[9] Doc. 11 at 4–8; Doc. 34-1 at 6–7.

the United States.[10] Defendants argue that Plaintiff was solely an employee of Aurora Manor and that a FLSA collective should not include MDS nurses from other facilities.[11]

## II. Discussion

There are two stages to the FLSA collective action certification process. At the first "notice" stage, a plaintiff must make a "modest factual showing" that "his position is similar, not identical, to the positions held by putative class members."[12] This is a "fairly lenient" standard.[13] At the second stage, after discovery, the Court more closely considers the collective action employees' situations.[14]

A FLSA collective's member-employees must be "similarly situated."[15] To determine whether the employees are similarly situated, the Court considers the "factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action."[16]

FLSA collective plaintiffs are similarly situated if their "causes of action accrued in approximately the same manner as those of the named plaintiffs."[17] Further, employees can be similarly situated when their claims are "unified by common theories of defendants'

---

[10] Doc. 34-1 at 4–5, 7; Doc. 34-8.
[11] Doc. 37 at 6, 19.
[12] *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006) (citations omitted).
[13] *Id.* at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)).
[14] *Comer*, 454 F.3d at 547.
[15] 29 U.S.C. § 216(b).
[16] *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (quoting Charles Alan Wright et al., 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.)), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).
[17] *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011).

Case No. 1:20-cv-02542
Gwin, J.

statutory violations, even if the proofs of these theories are inevitably individualized and distinct."[18]

Defendants argue that Plaintiff must meet a slightly higher standard to justify conditional certification because the parties have conducted some discovery.[19] "When, as is the case here, parties have already conducted discovery on the issue of conditional certification, some courts apply a 'modest plus' standard, requiring a showing beyond the lenient step-one standard, but not as stringent as the showing required at step two."[20]

This "modest plus" analysis still focuses on whether the potential collective members are similarly situated, and "does not touch upon the merits of plaintiff's claims."[21] A court analyzes whether Plaintiff has "made [a] sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists."[22] This "modest plus" requirement allows Courts to consider "(1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with respect to individual plaintiffs; and (3) fairness and procedural considerations."[23]

---

[18] *O'Brien*, 575 F.3d at 585.
[19] Doc. 37 at 13–14.
[20] *Weisgarber v. N. Am. Dental Grp., LLC*, No. 4:18CV2860, 2020 WL 1322843, at *2 (N.D. Ohio Mar. 20, 2020).
[21] *Jungkunz v. Schaeffer's Inv. Research, Inc.*, 1:11–cv–00691, 2014 WL 1302553, at *7 (S.D. Ohio Mar. 31, 2014).
[22] *Creely v. HCR ManorCare Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011) ("Plaintiffs need not have moved the ball far down the field, but they need to have shown some progress as a result of the discovery as measured against the original allegations and defenses.").
[23] *Jungkunz*, 2014 WL 1302553, at *7.

Case No. 1:20-cv-02542
Gwin, J.

Here Plaintiff seeks certification for two collectives: One that encompasses all MDS nurses at all Defendant-related facilities, and one that applies only to all nurses at the Aurora Manor facility.[24]

### a. Nationwide MDS Nurse Collective

Plaintiff meets the both the traditional and "modest plus" standard to conditionally certify her proposed nationwide collective of:

> [s]alaried MDS nurses and coordinators who worked more than 40 hours in one or more work weeks at any time in the three years preceding the date of the grant of conditional certification at any of the 122 facilities listed on Saber Healthcare Group, LLC's website and who have not executed arbitration agreements with Defendants.[25]

Plaintiff explains that Defendant Saber Healthcare Group operates 122 facilities, including "Aurora Manor[,] in Delaware, Florida, Indiana, North Carolina, Ohio, Pennsylvania, and Virginia."[26] Further, Plaintiff says that Defendant Saber Healthcare Holdings is a holdings company with "an ownership interest" in nursing facilities across the country. Saber Healthcare Holdings has the same ownership as Saber Healthcare Group.[27]

Plaintiff does not explain the role of Defendant Multi-Care Management, Inc. in her conditional certification motion. In Plaintiff's amended complaint, she asserts that Multi-Care Management, Inc. is "an affiliate or subsidiary of [Saber Healthcare Holdings] and

---

[24] Doc. 39 at 18.
[25] *Id.*
[26] Doc. 34-1 at 4.
[27] *Id.* at 4–5 ("To recap, during all time periods relevant to this case, William Weisberg and George Repchick owned (through their trusts) and controlled (as trustees of those trusts) SHH, which owned SHG, a company for which they acted as the two ranking corporate officers. SHG, in turn, operated nursing homes across the country.").

Case No. 1:20-cv-02542
Gwin, J.

[Saber Healthcare Group] and, at all times relevant, provided operational and management services at several SHH/SHG facilities, including Aurora Manor."[28]

Only an employer can violate FLSA.[29] Defendants argue that only Defendant Aurora Manor had an employer relationship with Plaintiff[30]: "notwithstanding some common relationship, [Defendant entities] only interact with one another through arms-length business dealings and contracts, if at all."[31] Defendants say Saber Health Group serves as an "advisor" or consultant to nursing facilities. Defendant entities did not hire or fire individual facility employees.[32]

But whether Defendants are joint employers is a fact question that goes to Plaintiff's claims' merits. Merits questions are not appropriate at the first conditional certification stage.[33] At this stage, the question is whether potential collective members are similarly situated.

Plaintiff has shown that MDS nurses across the Saber-affiliated facilities were similarly situated. Plaintiff notes that Defendant Saber Healthcare Group "promulgated" the policies and procedures relevant to Plaintiff's claims.[34]

---

[28] Doc. 11 at 3, 7 ("Defendant Multi-Care Management, Inc. was an 'employer' of Plaintiff within the meaning of the FLSA . . . in that it had authority to . . . promulgate work rules and assignments and to set the employees' conditions of employment. By way of example, Multi-Care Management, Inc. promulgated and published the employee handbook governing many human resources aspects of the work of Plaintiff and her co-workers at Aurora Manor.").
[29] 29 U.S.C. § 207.
[30] Doc. 37 at 19.
[31] *Id.* at 9.
[32] *Id.* at 20–21.
[33] *Terrell v. Health Care Bridge, Inc.*, No. 1:19-cv-2762, 2020 WL 3403019, at *2 (N.D. Ohio June 19, 2020) (citing *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015)); *Kis v. Covelli Enters., Inc.*, No. 4:18–cv–54, No. 4:18–cv–434, 2018 WL 2227782, at *2 (N.D. Ohio May 16, 2018) (citing *Waggoner*, 110 F. Supp. 3d at 765).
[34] Doc. 34-1 at 6.

The Parties' limited discovery so far further supports potential collective members' similarity. Defendant-affiliated facilities across the nation used the same MDS nurse and coordinator job descriptions drafted by Saber Healthcare Group.[35] MDS nurses carry out the same duties using the same standardized government forms and instructions.[36] Saber Healthcare Group organized time tracking and payroll for all Defendant-affiliated facilities.[37] The time tracking system allegedly automatically deducted lunch times for MDS nurses across Defendant-affiliated facilities.[38] Plaintiff contends that all salaried MDS nurses across Defendant-affiliated facilities were classified as FLSA-exempt from overtime pay.[39] Facilities reviewed MDS nurses' performance using a standard Saber evaluation form.[40] Defendant Saber Healthcare Group promulgated the same materials for new MDS nurse orientation and training at all Defendant-affiliated facilities.[41] In at least one instance, Defendant Saber Health Care Holdings was listed as a potential collective member's employer.[42]

Most importantly, Plaintiff and potential collective members attest that they often worked more than 40 hours per week and were encouraged to underreport their hours in Defendants' virtual timeclock system used across Defendant-affiliated facilities.[43]

---

[35] *Id.*; Doc. 34-13.
[36] Doc. 34-1 at 7–8; Doc. 34-18; Doc. 34-19.
[37] Doc. 34-1 at 6; Doc. 34-15; Doc. 34-17. Defendants argue that the centralized payroll system does not indicate any Saber Defendants' joint employer status. Doc. 37 at 21. That does not negate the fact that the centralized payroll system supports potential collective members similarly situatedness. All potential collective members were reporting their hours within the same system.
[38] *See* 34-14 at 3.
[39] Doc. 34-1 at 6, 8–9; Doc. 39 at 6.
[40] Doc. 34-1 at 10.
[41] Doc. 39 at 5.
[42] *Id.* at 9.
[43] Doc. 34-1 at 12; Doc. 34-2 at 1; Doc. 34-4 at 1; Doc. 34-5 at 1; Doc. 34-22; Doc. 34-23 at 1. As such, Plaintiff provides more evidence than in Defendants' cited cases, *Combs v. Twins Grp., Inc.*, No. 3:16-

Plaintiff and potential collective members are similarly situated. Plaintiff provides evidence that she and potential collective members share causes of action that grew out of similar working conditions, treatment, policies, and practices despite the fact that they worked at different facilities.

At this stage, the record sufficiently links potential class members through the various Defendant entities. Defendants' complicated corporate structure appears to serve as an umbrella that enables individual facilities' operations and suggests employer-like control. The parties should conduct further discovery on the joint employer issue. Defendants can move to decertify the collective if it becomes clear that one or more Defendants could not be considered collective member's joint employer.[44]

### b. Aurora Manor Collective

Plaintiff also requests conditional certification for a collective of "[h]ourly nurses at Aurora Manor who worked more than 40 hours in one or more work weeks at any time in the three years preceding the date of the grant of conditional certification and who have not executed arbitration agreements with Defendants."[45]

Although these nurses presumably had different job descriptions, Plaintiff contends that they were all paid hourly and experienced automatic lunchtime pay deductions

---

cv-295, 2016 WL 7230854, at *1 (S.D. Ohio Dec. 14, 2016), and *Marek v. Toledo Tool & Die Co., Inc.*, No. 3:16CV03005, 2017 WL 5891765, at *1 (N.D. Ohio Nov. 29, 2017). Doc. 37 at 24.

[44] *Kis*, 2018 WL 2227782, at *2 ("Defendant Covelli protests that it is not the Plaintiffs' employer . . . These arguments, however, generally go to the merits of Plaintiffs case and are not relevant to deciding whether this case should proceed as a collective action. It is true that, if the putative class members had many different employers, they would not be similarly situated. But the Plaintiffs point to evidence suggesting that Covelli is, at the very least, a joint employer of the Plaintiffs and putative class members. As joint employers are usually jointly and severally liable for FLSA violations, that is enough to allow for conditional certification. If it becomes apparent at a later stage that Covelli is or was not the class members' employer, it may move for decertification.").

[45] Doc. 39 at 18.

Case No. 1:20-cv-02542
Gwin, J.

regardless of whether they took full lunch breaks. Plaintiff and two putative collective members attest that they regularly worked more than 40 hours per week without receiving overtime pay.[46]

Plaintiff meets the similarly situated standard at this stage. Plaintiff and potential collective members "are unified by common theories of defendants' statutory violations"[47] in that they each claim that Defendant Aurora Manor did not pay them for overtime work or for lunch breaks they did not take.

Defendants can move to decertify the collective if and when evidence indicates that the collective members are not sufficiently similarly situated.

### III. Conclusion

For the foregoing reasons, the Court **CONDITIONALLY CERTIFIES** two FLSA collectives:

> (1) Salaried MDS nurses and coordinators who worked more than 40 hours in one or more work weeks at any time but were not paid overtime in the three years preceding the date of the grant of conditional certification at any of the 122 facilities listed on Saber Healthcare Group, LLC's website and who have not executed arbitration agreements with Defendants; and
>
> (2) Hourly nurses at Aurora Manor who worked more than 40 hours in one or more work weeks at any time but were not paid overtime in the three years preceding the date of the grant of conditional certification and who have not executed arbitration agreements with Defendants.

The Court adds "but were not paid overtime" to both collective definitions to better align the definitions with Plaintiff's FLSA claims.

---

[46] Doc. 34-2 at 2; Doc. 34-22; Doc. 34-23 at 1–2; Doc. 39 at 6–7.
[47] *O'Brien,* 575 F.3d at 585.

Case No. 1:20-cv-02542
Gwin, J.

The Court also **ORDERS** the parties to meet and confer on notice form and content. Within 14 days of this Order, the parties must submit a joint proposed notice distribution plan for potential collective members, including proposed notice language and a suggested opt-in timeline. If the parties are unable to agree on a notice plan, they may submit separate plans.

The Court **ORDERS** Defendants to provide Plaintiff with a roster of all potential opt-in collective members that fall within the above collective definitions, including their full names, their dates of employment, job titles, their last known home addresses, phone numbers, and their personal email addresses within 21 days of this Order.

IT IS SO ORDERED.


Dated: July 9, 2021                                        *s/     James S. Gwin*
                                                                                                                          JAMES S. GWIN
                                                                                                                          UNITED STATES DISTRICT JUDGE